# SUPREME COURT.

MARY E. NOYES and JAMES LOVERIDGE, executors, etc., appellants, agt. THE CHILDREN'S AID SOCIETY OF THE CITY OF NEW YORK and others, respondents.

*Power of surrogate of New York as to costs in cases contested before him.*

The surrogate of New York has no power, under the act of 1870 (*Laws of 1870, section 9, chapter 359*), to make allowances to parties who do not *prevail* in cases contested before him.

He may excuse such parties, if the case be in his judgment a proper one, from the payment of costs personally, but he cannot take the subject-matter of the contest, which he adjudges to belong to the successful party, and distribute it, or any part of it, among his defeated antagonists.

*General Term, First Department, January,* 1877.

*Before* DAVIS, *P. J.,* BRADY *and* DANIELS, *JJ.*

APPEAL from an order of the surrogate of the city and county of New York, making allowance to the counsel of respondents, etc.

*R. W. De Forest,* for appellants.

*D. R. Jaques* and *H. L. Clinton,* for respondents.

DAVIS, P. J. — The respondents were unsuccessful contestants of the will of Eliza Hearsey, of which the appellants were proponents. They claimed under a prior will of the testatrix, in which they were made residuary legatees. After making a decree, admitting to probate the will propounded

by the appellants, which revoked the former will, the surrogate made an order under section 9 of chapter 359 of the Laws of 1870, granting an allowance and disbursements to the counsel of the prevailing party; and granting an allowance and disbursements to the counsel of the Children's Aid Society, and an allowance to the counsel of St. Luke's Home, which corporations were the defeated contestants. The principal question upon this appeal is whether the surrogate had power to grant allowances to the counsel of the contestants. Previous to the Revised Statutes, surrogates had no power to award costs in any case (*Schultz* agt. *Pulver*, 3 *Paige*, 183; *S. C.*, 11 *Wend.*, 363; *Reid* agt. *Vanderheyden*, 5 *Cow.*, 719; *Devin* agt. *Patchin*, 26 *N. Y.*, 441, 449).

The Revised Statutes provided as follows: " The surrogate may award costs to the party in his judgment entitled thereto, to be paid either by the other party personally, or out of the estate which shall be the subject of the controversy" (2 *R. S.*, 223, *section* 10; 3 *R. S.* (*5th ed.*), 367, *section* 25).

This provision was not affected by the Code (*Devin* agt. *Patchin*, 26 *N. Y.*, 441), so that prior to the act of 1870, only taxable costs could be awarded, and the surrogate had no power to make any allowances, either to a party as additional costs or the counsel as counsel fees (*Reed* agt. *Reed*, 52 *New York*, 651; *Burtis* agt. *Dodge*, 1 *Barb. Ch.*, 77; *Devin* agt. *Patchin*, *ubi sup.*; *Lee* agt. *Lee*, 39 *Barb.*, 172; *Western* agt. *Romaine*, 1 *Brad.*, 37; *Wilcox*, agt. *Smith*, 26 *Barb.*, 316).

In *Lee* agt. *Lee* (39 *Barb.*, 172; *S. C.*, 16 *Abb. R.*, 129) it was held by the general term of the first district, that the Revised Statutes only permitted the surrogate to award costs to the successful party or parties, and that he could not give costs out of the estate to defeated contestants.

And this construction accords with the language of the statute which empowers him " to award costs to *the party* in his judgment entitled thereto, "— not to both or all parties —

" to be paid by *the other party* personally, or out of the estate which shall be the subject of the controversy."

This statute conferred power to adjudge of three things: First, whether costs should be awarded; second, the party entitled thereto by reason of success in the controversy; and third, whether they should be charged personally on the other party, or be paid out of the subject in controversy. This was the condition of the law when the enactment of 1870 was made. That act declared that " the surrogate of said county (New York) may grant allowances in lieu of costs, to counsel in any proceeding before him in the same manner as are now prescribed by the Code of Procedure " (*Section* 9, *chapter* 359, *Laws of* 1870, *p.*, 828). This section has, in practice, been construed in the broadest and most sweeping sense; and such construction has literally reversed what was said in one of the opinions of the court of appeals (*Devin* agt. *Patchin*, 26 *N. Y.*, 449), to wit, that " surrogates cannot lawfully act as almoners of the estates of deceased persons."

The construction of this section seems never to have been presented to an appellant tribunal, but the reason of this fact (if it be one) may perhaps be found in another portion of the opinion just quoted from.

We think the key to the true construction may be found in the plain letter of the act. The power given to the surrogate is to " grant allowances in lieu of costs." He may still award costs, if he decide to do so, or in lieu of them he may grant allowances. This language very clearly restricts the allowances he may make to the cases in which he may award costs, because he is only empowered to put the allowance in the place of costs.

Hence, in cases where he cannot in his discretion give costs, he cannot in his discretion grant an allowance. We have already seen that he can only award costs to a successful party, and that his discretion beyond that lies in determining whether he will charge the other party personally with the costs, or direct their payment out of the fund. The power

conferred by the section is, therefore, no broader in its operation than that given by the Revised Statutes in respect of costs; and is simply an authority to substitute allowances, in lieu of costs, in cases where the surrogate can lawfully award costs.

Nor do we think the force of this construction is at all diminished by the fact, that the word " allowances," is in the plural. It is obvious that there may be in such litigations several successful persons to whom costs may be awarded, and the form of expression more properly refers to those cases than to everybody who may happen to be on either side in such a controversy, whether losing or winning. Nor does the reference to the Code seem to us to enlarge the power of the surrogate. He " may grant allowances in lieu of costs to counsel in the same manner as are prescribed by the Code of Procedure in civil actions."

This is merely saying that his mode of proceeding in granting the allowance, shall be restricted by the provisions of the Code in respect to the character of the case, as to its being difficult and extraordinary, or one in which a trial has been had, and in respect to " the subject-matter involved " or " the amount of the recovery or claim," and the limitation imposed thereby upon the extent of the allowance.

These things are regulated by section 309 of the Code. That section provides for allowances in addition to costs; the section relating to surrogate courts provides only for allowances in lieu of costs; but it is apparent that under either of them no allowance is to be given unless the case and the party be one to whom costs are, or may be awarded. That part of section 300, which provides for actions or proceedings for the partition of real estate, may be eliminated in considering this question. The residue of the section will then read thus : " In difficult and extraordinary cases, where a defense has been interposed, or in such cases where a trial has been had  *  *  *  the court may also, in its discretion, make a further allowance to any party, not exceeding five per

cent upon the amount of the recovery or claim, or subject-matter involved." The party to whom this further allowance may be made, must be a successful one, at least in respect of costs, or the allowance will not be further.

To ascertain the significancy of the word "further" we must look at the several preceding sections of the Code, from which we find that costs are allowed only to "the prevailing party" who is to be ascertained as prescribed by such sections, and it is to him, when so ascertained that the further allowance can be made.

And so if we import the words "to any party" into the surrogate's section in place of the words "to counsel" we gain nothing, because in either case the allowance must be either a "further" one, which is in addition to costs given, or one "in lieu of costs," which implies that costs can be, or may have been given. We think, therefore, that the surrogate has no power, under the act of 1870, to make allowances to parties who do not "prevail" in cases contested before him.

He may excuse such parties, if the case be in his judgment a proper one, from the payment of costs personally, but he cannot take the subject-matter of the contest which he adjudges to belong to the successful party, and distribute it, or any part of it among his defeated antagonists. A construction which permits that to be done is hostile to the spirit of our laws, which in cases of established testacy, requires estates to be divided according to the will of the testator, and in cases of intestacy, according to the statute of distributions.

It is also against public policy, for it virtually offers a premium to reckless contestants and their counsel to prevent the settlement of estates, by promoting litigation and engendering strife, when every interest of the public calls for their speedy adjustment. The intention of the statute was to enable the surrogate, by making reasonable allowances, to compensate executors and administrators, or other prevailing parties, for expenses which might exceed the items and taxable

cost; and not to allow him, *ad libitum*, to reward the unsuccessful clamor of defeated litigants. The other construction might lead to great abuses, to the injury of the widows and orphans, and the creditors of deceased persons, whom all courts should be sedulous to protect. It would be a hazardous experiment for a wealthy man to attempt to dispose of his estate by his own will, if it could be distributed at the mere will of the surrogate, amongst the counsel of all who choose to set up whatever pretexts of contest the ingenuity of avarice can devise. We do not mean by these suggestions, to indicate that the will in this case was improperly contested ; but on the contrary, we think the contestants had probable cause to resist the probate of the will propounded, and that their contest was in all respects fairly conducted, and for that reason we have excused them from costs on all the appeals. But we fail to see any reason in law or justice for awarding them out of the estate several thousand dollars, *pro falso clamore*.

Without considering the several other questions presented by the appeal, some of which are fatal to a large portion of the allowance, we think it our duty to reverse the parts of the order appealed from, but without costs.

BRADY and DANIELS, JJ., concur.